# Pacific Guano Co. v. Anglin.

### Bill in Equity for Cancellation of Mortgage.

1. *Written instrument signed without reading; fraud as defense against.*—When a person's signature to a conveyance. or other written instrument, is procured by false representations as to its contents of which he is ignorant, this is fraud in the execution, for which the instrument may be avoided and set aside; but, if he signs the instrument without reading it, being able to read, and no fraud, deceit or misrepresentation being practiced on him, he can not avoid the instrument because he was not informed of its contents, his ignorance being attributable to his own negligence.

2. *Same; mortgage signed by married woman.*—When a married woman, being relieved of the disabilities of coverture, unites with her husband in a mortgage of her property, which purports to be given to secure the payment of advances to make a crop, as evidenced by two promissory notes signed by her and her husband, one of which was in fact given for a former debt of the husband, she can not obtain equitable relief against the mortgage to the extent of that debt, on the ground of misrepresentations by her husband as to the purpose and contents of the instrument, when it appears that no representations were made to her at the time the notes and mortgage were signed, and that she signed them without reading, and without inquiry as to their contents.

3. *Marshaling assets, as between principal and surety.*—When the principal and his surety jointly execute a mortgage to the creditor, conveying property which belongs to each of them, the surety has an equity, on foreclosure, to require that the property of the principal shall be first applied to the payment of the debt.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 11th February, 1885, by Mrs. Ellender C. Anglin, the wife of Thomas W. Anglin, against her said husband and the Pacific Guano Company, a foreign corporation; and prayed an injunction against the sale of a tract of land under the power contained in a mortgage, and a cancellation of the mortgage as to the land. The mortgage, a copy of which was made an exhibit to the bill, was dated February 15th, 1883, signed by complainant and her husband, duly acknowledged, certified and recorded. It recited an indebtedness to Weedon & Dent, the mortgagees, of $2,039, as evidenced by two promissory notes of even date with the mortgage, and that the indebtedness was for and on account of advances to make a crop; conveyed a tract of land containing 900 acres, which belonged to the complainants, together with the crop

to be grown during the year 1883, mules, horses, wagons, &c.; and was transferred by Weedon & Dent, by written assignment dated the 17th April, 1884, to the Pacific Guano Company. One of the two notes secured by the mortgage was for $1,475, and was payable to Weedon & Dent; and there was no controversy as to the consideration, validity and payment of this note. The other note was for $564, and payable to Weedon & Dent, "agents for Pacific Guano Company;" and this note, the complainant claimed, was without consideration as to her, and was given for an antecedent debt of her husband. Each of the notes was payable at the Eufaula National Bank, and each contained a waiver of exemptions. The complainant sought relief against the mortgage, to the extent of the unpaid note, on the ground of fraudulent representations to her by her husband, as to the consideration and purpose of the mortgage, by which she was induced to sign it in ignorance of the fact that this note was included. An answer to the bill was filed by the Pacific Guano Company, averring that said note for $564 was given in compromise and settlement of a debt for a larger amount due and owing by said Thomas W. Anglin, and was included in the mortgage according to the terms of the compromise; denying that any fraud was practiced on the complainant, and alleging want of notice thereof, if any was in fact practiced; and claiming protection as a purchaser for value without notice.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, citing *Noble v. Moses Brothers* (74 Ala. 604), and *Thornber v. Sheard* (12 Beav. 589); and his decree is now assigned as error.

A. H. MERRILL, for appellant, cited *Tyson & Gordon v. Savings & Loan Asso.*, 57 Ala. 323; *Downing v. Blair*, 75 Ala. 216; *Life Insurance Co. v. Randall*, 71 Ala. 220; *Thames & Co. v. Rembert*, 63 Ala. 561; *Moog v. Strang*, 69 Ala. 98.

J. M. WHITE, and H. D. CLAYTON, Jr. *contra*.

CLOPTON, J.—Mrs. Anglin seeks by the bill, which was brought by her, to have cancelled a mortgage made by her and her husband, embracing lands being her statutory separate estate, and to enjoin appellant from selling the lands under a power contained in the mortgage. The removal of her disabilities, and her capacity to mortgage the lands, are conceded. Its execution is duly acknowledged before a proper officer, whose certificate is attached. The ground of impeachment is, that she was induced to sign the

mortgage by reason of misrepresentations of its contents, on which she relied. The alleged misrepresentations consist in a statement by her husband, that the mortgage was only intended to secure money advanced to make a crop, and a recital in the mortgage, that the sum of money therein mentioned was obtained for the purpose of making a crop; whereas, in fact, it was intended to secure, not only the money advanced, but an antecedent debt due by her husband to appellant. The bill alleges that the money advanced has been paid by the proceeds of cotton delivered to the mortgagees, and that the only sum unpaid is the note due to appellant. The controversy is wholly between complainant and appellant.

There can be no question of the general rule, that a conveyance, or other instrument, is inoperative, if the signature of the party sought to be charged is obtained by false representations of its contents, of which he is ignorant, whereby he is induced to make an instrument which he did not intend. This constitutes fraud in the execution. But, in such case, there must be satisfactory proof of the misrepresentation, and its inducement operating at the time of execution. The only witnesses examined to prove the misrepresentation, are complainant and her husband. The testimony of the husband is greatly impaired by the contradictory statements of Watson and Dent, as to the circumstances under which the debt due appellant was incorporated in the mortgage, and the rate of interest at which the time of payment was extended. Our conclusion from the evidence is, that Anglin, being unable, by reason of financial embarrassment, to make a crop without procuring advances, negotiated with Weedon & Dent for an advance of money to enable him to cultivate the lands. Complainant, on being informed of these facts, consented to give a mortgage on her lands to secure the money advanced. Afterwards, Anglin, being pressed for payment of notes which he owed appellant, then past due, and containing a waiver of exemptions of personal property, compromised the indebtedness by a reduction of the original amount, and an extension of the time of payment without interest, agreeing to secure the same by mortgage; and, to avoid the necessity and expense of two mortgages, the note given on the compromise was, by agreement, included in the mortgage in controversy. The notes and mortgage were delivered to Anglin for execution, and on the next day were signed by him and complainant. While both complainant and her husband testify, that she was not informed that the mortgage included the note to appellant

at the time she signed it; and the testimony of the husband leaves to inference that, at this time, he told her that the mortgage was for borrowed money with which to cultivate the lands; the evidence fails to satisfy us that any representation of the contents, or of the debts secured by the mortgage, was made at the time of execution, or at any time after the agreement to include appellant's note in the mortgage. Fraud in the execution, as we collect from the evidence, is claimed, on the statement of the husband to complainant, of his inability to cultivate the lands unless he could obtain advances, her consent to give a mortgage for this purpose, and her subsequent signature of the mortgage without being informed that it included a debt other than for money advanced.

Complainant, who, of course, knows what representations induced her to act, after saying in her testimony that she agreed with her husband, on being informed of his necessity for money, to sign a mortgage on her lands if he could obtain the loan, states generally that, afterwards, on the mortgage being presented to her, she signed it, relying on her husband's statement, and the express terms of the mortgage. The question raised on the case made by the evidence is, whether fraud in the execution of the mortgage, sufficient to vitiate it, arises from the previous statement of the husband, the understanding between him and the complainant, and her signing it without being told that appellant's note was included.

The mortgage recites an indebtedness to Weedon & Dent, in the sum of two thousand and thirty-nine dollars, and a declaration that this sum was obtained *bona fide* for the purpose of making a crop. These are the statements of the mortgage referred to by the complainant, as those on which she relied in connection with the statement of her husband. It might have been reasonably inferred that complainant was thereby misled, had no writing other than the mortgage been presented at the same time for her signature, which corrected, modified, or explained its recitals in conformity with the truth. Mere reliance on false representations is not sufficient; it must be justified. While courts may frown upon an objection, that another has confided in his word, coming from the party who affirmed the fact, they also reluctantly listen to parties, who complain that they have been induced, by misrepresentations, to sign solemn writings, when sources of information, casting doubt upon the truth of the representations, were known and accessible to them, but of which they omitted to take advantage. And while mere opportunity, or means

of knowledge, may not be sufficient to overcome the effect and consequence of a misrepresentation; yet, when the representation is accompanied by another, showing in what respect, and to what extent it is untrue, if the party blindly confides in the one, and disregards the other—when gross negligence contributes to the deceit—solemn conveyances should not be disturbed, unless viglilance is lulled, and confidence reassured by some act, conduct, or artifice. *Watts v. Burnett*, 56 Ala. 340; *Montgomery v. Scott*, 30 Amer. Rep. 1.

While the mortgage contains the recitals mentioned, it also states, that the indebtedness therein expressed is evidenced by two notes; which were sent, and presented, with the mortgage, for her signature. The notes and mortgage were signed at the same time, in the presence of the same attesting witnesses, and must be considered as together constituting the representation, so far as any was made by the mortgagees, or either of them. One of the notes is for the sum of fourteen hundred and seventy-five dollars, and payable to Weedon & Dent, October 1, 1883; and the other is for the sum of five hundred and sixty-four dollars, payable November 1, 1883, to "Weedon & Dent, agents for Pacific Guano Co." Mere reading the notes, or causing them to be read, would have informed complainant, that the sum of indebtedness expressed in the mortgage was the aggregate of two debts due to different persons, one of them not being the person from whom, as alleged in the bill, the advance of money was to be obtained; that the statement of the mortgage was qualified and explained, and that the note of appellant was embraced, and intended to be secured. There is no pretense, that any misrepresentation of the contents of the notes was made. The complainant can read and write, and the only excuse offered for not reading the notes is, that she presumed they were in exact accordance with the mortgage. Why read the mortgage, and not the notes, to see if they accorded?

The rule is well settled, that a person who signed an instrument without reading it, when he can read, can not, in the absence of fraud, deceit, or misrepresentation, avoid the effect of his signature, because not informed of its contents. It has been held, that a married woman can not avoid the legal effect of her signature to a mortgage, on the ground of fraud or misrepresentation, by merely showing that, when she signed it, she neglected to read it, and was ignorant of its contents. The presumption is, that her ignorance is attributable to her own negligence.—*Dawson v. Burrus*, 73 Ala. 111; *Burroughs v. Pa. Guano Co.*, 81 Ala.

[Pacific Guano Co. v. Anglin.]

255. In *Goetter v. Pickett*, 61 Ala. 387, the note contained a waiver of exemptions, and the defendant offered to prove, in support of a plea denying the waiver, that when he signed the note he did not read it, though he could read, and had ample opportunity to do so. It is said : "A party who [has] having full capacity and opportunity to read a paper, and to whom there is no misrepresentation of its contents, can not set up his own want of attention—his failure to read it—as a fact to invalidate it." If complainant was ignorant of the debts really included in the mortgage, her ignorance is attributable to her own carelessness. *Roach v. Karr*, 26 Amer. Rep. 788.

The transaction created the relation of surety and principal, between complainant and her husband. By the mortgage, she pledged her property for the payment of *his* debts. The note is commercial paper. The appellant, having compromised the original debt, by reducing the amount, and extending the time of payment, is a holder for value. The mortgage is entitled to the same protection, as the note would have been if signed by one having capacity to contract.—*Spence v. Mobile & M. Ry. Co.*, 79 Ala. 576. The husband was not the agent of appellant, or of the mortgagees. He was the agent of complainant, for the delivery of the notes and mortgage after execution. The appellant and Weedon & Dent had no notice of the understanding between complainant and her husband ; and, without any personal interview or representation, caused to be placed before her the mortgage and notes, as the papers to be executed, which informed her of the debts to be secured, with ample opportunity to read them; and no other information of their contents was given. They were in the possession of the husband, from the time they were delivered to him, until their execution on the succeeding day. The security of business transactions would be endangered, and the door opened to fraud, if the legal effect of a mortgage, signed under such circumstances, can be avoided by proof of false representations of the husband, of which the mortgagee is ignorant. If complainant has been misled into executing an instrument, which she did not intend to make, she must attribute it to her own neglect.

As the mortgage also embraces individual property of the husband, and as complainant stands to him in the relation of surety, it is her equitable right to have his property first sold, if possession thereof is delivered to the register on demand.

Reversed and remanded.